IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES J. "JIM" BELLER, as Personal
Representative of the estates of
LARRY BELLER and RITA BELLER, deceased,
and TERRY PFEIFER, as Personal Representative
of the estates of EDWARD RAMAEKERS and
ALICE RAMAEKERS, deceased,

                                        Plaintiffs,

v.                                                                                   No. CIV 02-1368 WPJ/LFG

The UNITED STATES OF AMERICA, and
AURENE M. MARTIN, Acting Assistant
Secretary of Indian Affairs,

                                        Defendants.

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants' Motion for Leave to Take Lloyd Larson's Deposition at the Federal Correctional Institution in Phoenix, Arizona, and (In the Event that the Related Criminal Proceedings Against Larson have not been Concluded by the Date on which Discovery is Scheduled to Close in this Case) for Further Leave Permitting Larson's Deposition to be Taken after the Close of Discovery, and Memorandum in Support Thereof, filed May 13, 2003. [Doc. No. 55.] That motion is fully briefed. [Doc. Nos. 72, 89.] A day later, Plaintiffs filed a similar motion -- Plaintiffs' Rule 30(a)(2) Request for Leave to Depose Lloyd Larson, filed May 14, 2003. [Doc. Nos. 56, 57.] On May 28, 2003, Defendants filed a response to Plaintiffs' motion, and on May 30, 2003, Lloyd Larson (through his attorney who represents him in the underlying criminal

1

proceeding), also filed a response, with his notice of his intent to assert his privilege against self-incrimination.[1]  [Doc. Nos. 69, 73.]  Plaintiffs filed a joint reply [Doc. No. 91], and then Plaintiff Terry Pfeifer filed a supplement to Plaintiffs' joint reply [Doc. No. 92].  On June 19, 2003, Defendants filed a motion to strike Plaintiff Pfeifer's supplemental reply.  [Doc. No. 95.]  After careful consideration of the pleadings and law, the Court concludes that the requests to take Mr. Larson's deposition will be granted, as explained more fully below.  Defendants' motion to strike is denied as moot, since the Court's decision does not rely on the supplemental reply at issue.[2]

**Background**

Both parties ask to take the deposition of Lloyd Larson, who is currently incarcerated in a federal facility in Phoenix, Arizona.  Mr. Larson is not a party in this civil matter.  However, this litigation arises out of an automobile accident that occurred within the boundaries of the Laguna Indian Pueblo, on January 25, 2002 at about 1:53 p.m., in which Plaintiff Bellers and Ramaekers were killed after being struck head-on by a vehicle driven by Mr. Larson.  At the time of the accident, Mr. Larson was driving a government-owned pick-up truck in the wrong direction on the Interstate in Cibola County, New Mexico.  He was an employee of the Bureau of Indian Affairs ("BIA"), and undisputably was driving while legally intoxicated at the time of the accident.  Plaintiffs, as personal

---

[1] Mr. Larson's criminal defense attorney, Alonzo Padilla, acknowledges that Mr. Larson is not a party to this civil action and that Mr. Padilla has not entered an appearance on Larson's behalf in this case.  Thus, as correctly noted by Plaintiffs, Mr. Larson's "response" in this case is unauthorized.  Nonetheless, the Court elects to consider Mr. Larson's position as set forth in his pleading (the majority of which is also contained in the government's pleadings), but directs Mr. Larson to comply with the pertinent rules of civil procedure in all future matters related to this civil litigation.

[2] Defendants are correct that Plaintiff Pfeifer's "supplemental" reply or surreply was not filed in accordance with the pertinent rules of civil procedure.  However, because the Court resolved the motions without consideration of the supplemental reply, the Court denies the motion to strike as moot.  Plaintiff Pfeifer is advised to adhere to the pertinent rules of civil procedure in the future.

representatives of the deceased, brought this action against the United States seeking damages under the Federal Tort Claims Act. Plaintiffs allege that Mr. Larson was acting within the scope of his employment as a BIA employee, and therefore, that the United States is liable for Mr. Larson's conduct under a theory of *respondeat superior*.

The United States denies that it should be held liable and asserts that Larson was not acting within the scope of his employment at the time of the fatal collision, based on allegations that Mr. Larson never reported to work on the day of the accident and was instead engaged in a "personal frolic" when the collision occurred.

As a result of this fatal collision, criminal charges were brought against Mr. Larson. He was indicted and pled guilty to four counts of second degree murder for the deaths of the two couples. United States v. Lloyd Larson, No. CR 02-208 (D.N.M.). The New Mexico District Court sentenced Mr. Larson to a term of 240 months (20 years) for each of the four murders, the terms to run concurrently. Mr. Larson appealed his sentence. United States v. Lloyd Larson, No. 02-2240 (10th Cir.). Oral argument on the appeal is scheduled to take place before the Circuit Court on July 10, 2003. According to Defendants, Mr. Larson's appeal challenges the legality of his sentence on several grounds. According to Plaintiffs, Mr Larson's appeal is limited to the question of whether the Court properly imposed an upward departure from the sentencing guidelines range and whether Mr. Larson's criminal proceeding should be remanded for re-sentencing. Mr. Larson's appeal does not request that he be permitted to withdraw his plea. Indeed, Mr. Larson's attorney wrote in a sentencing memorandum that Mr. "Larson never deviated from acceptance of full responsibility for the deaths of the two Nebraska couples. . . ." [Doc. 29, No. CR 02-208.]

Both Plaintiffs and Defendants agree that Mr. Larson must be deposed for purposes of this civil litigation. The primary dispute here is the timing of that deposition.[3] Plaintiffs ask that the deposition be scheduled as soon as practicable. Defendants argue that the deposition should not take place until the appeal of the criminal sentencing matter is resolved,[4] and that to require an earlier deposition would result in compelling Mr. Larson to testify about matters concerning his conviction before his sentence is fixed.[5] Defendants further request leave to take Mr. Larson's deposition after the close of discovery in this case, should the criminal appeal not be resolved prior to the close of discovery on August 5, 2003.

Mr. Larson, through his criminal defense attorney, asserts that he will not submit to a deposition in this related civil matter until the criminal proceeding is concluded. [Doc. No. 73.] Mr. Larson also contends that if compelled to submit to a deposition before the completion of his criminal appeal, he will invoke his Fifth Amendment privilege against self incrimination. The government

---

[3]Neither party has requested a stay of this civil action, although the briefs contain some discussion of stays.

[4]Actually, the government's initial argument was that Mr. Larson's deposition should not take place until the appeal of his sentence was concluded. At first, the government asked that should the criminal proceedings not be concluded before the August 5, 2003 discovery deadline in this case, it be given leave to take the deposition after the close of discovery, perhaps inferring that the criminal proceedings would be concluded prior to the scheduled trial date of January 4, 2004. In subsequent pleadings, however, the government added that the criminal proceeding might not be completed until Larson sought review of a denial of his appeal to the Court of Appeals or the United States Supreme Court. Finally, the government now states that "even after the conclusion of the currently pending criminal proceeding . . . , it is doubtful whether Larson can be compelled to testify . . . until the applicable statute of limitation expires." Thus, apparently, the government envisions a period of years before the deposition can take place.

[5]Defendants' motion [doc. no. 55] and their response [doc. no. 69] to Plaintiffs' similar motion request relief more similar to that sought by a motion for protective order, i.e., a request to change the timing of the discovery. Presumably, however, the government recognizes its lack of standing to bring a motion for protective order on behalf of the non-party Larson. While Defendants are free to raise their arguments, they must do so via proper pleadings and in a manner that avoids duplicative pleadings. In other words, in this case, there was no need for two such similar motions to have been filed. The parties should have conferred to avoid this kind of pleading practice.

similarly argues that Mr. Larson "has at least colorable grounds[6] to argue that he cannot be compelled to testify in this case until his sentence has become fixed." The government further contends that requiring a deposition at this point would entail needless expenditures of time and resources by the parties since an early deposition of Larson will undoubtably result in motions to compel and/or a second deposition.

## **Analysis**

Rule 30(a)(2) requires a party to obtain leave of court to take the deposition of a person who is confined in prison. Fed.R.Civ.P. 30(a)(2). That rule also provides that leave "shall be granted to the extent consistent with the principles stated in Rule 26(b)(2). Id. Rule 26(b)(2) allows a court to limit the use of certain discovery methods if it determines:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2). Here, the parties do not dispute that each should be able to depose Mr. Larson. Clearly, Mr. Larson's testimony may be critical to the claims and defenses of both parties. Thus, the Court will grant leave under Rule 30(a)(2) to take Mr. Larson's deposition in the place of his incarceration. The only remaining question is the timing of that deposition.

---

[6] In a subsequent pleading, the government argues that "there can be no question but that Larson's assertion of his Fifth Amendment privilege . . . must be respected in this case."

5

Resolving the question of when the deposition should be scheduled implicates both Rule 26(b) and the law governing the assertion of the Fifth Amendment privilege against self incrimination. Rule 26(b) provides that parties may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." In other words, matters which are privileged may not be discovered. Even if the rules did not contain specific language exempting privileged information from discovery, the Fifth Amendment would shield any party who reasonably believes that evidence sought to be obtained would be used against him as an accused in a criminal prosecution. Wehling v. CBS, 608 F.2d 1084, 1086 (5th Cir. 1979), *reh'g denied*, 611 F.2d 1026 (5th Cir. 1980).

"The Constitution's privilege against self-incrimination has ancient and venerable antecedents." Carey v. Rudeseal, 112 F.R.D. 95, 96 (N.D. Ga. 1986). The importance of the Fifth Amendment privilege and the need for strong protection of its use are clear. Id. at 97. Supreme Court precedent instructs that the Fifth Amendment privilege extends to all types of testimonial proceedings, whether criminal or civil, including pretrial discovery in civil cases. Maness v. Meyers, 419 U.S. 449, 465, 95 S.Ct. 584, 595 (1975) (internal quotation omitted); United States v. Kordel, 397 U.S. 1, 7-8, 90 S.Ct. 763 (1970), *cert. denied*, 400 U.S. 821 (1970).

However, there are limits to the assertion of the Fifth Amendment privilege. The United States Supreme Court has "held that the privilege's protection [against self incrimination] extends only to witnesses who have 'reasonable cause to apprehend danger from a direct answer.' That inquiry is for the court; the witness' assertion does not by itself establish the risk of incrimination. A danger of 'imaginary and unsubstantial character' will not suffice." Ohio v. Reiner, 532 U.S. 17, 21, 121 S.Ct. 1252 (2001) (internal citations omitted) (*citing* Hoffman v. United States, 341 U.S. 479, 486 (1951)). *See also* Malloy v. Hogan, 378 U.S. 1, 11, 84 S.Ct. 1489, 1495 (1964) (privilege

6

against self incrimination protects disclosures only of evidence that will provide "a link in the chain of evidence needed to prosecute" criminal conduct.)

Moreover, it is "entirely inappropriate for the privilege to be asserted as a general matter in bar of all discovery or in bar of discovery by a particular method, as, for example, by a motion seeking to vacate a deposition notice." Gatoil v. Forest Hills State Bank, 104 F.R.D. 580, 581 (D. Md. 1985) (*citing* 8 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2018); Jones v. B.C. Christopher & Co., 466 F. Supp. 213, 223 (D. Kan. 1979) (holding that a witness may not assert the privilege by refusing to appear for a deposition at all). *See also* General Dynamics Corp. v. Selb Manuf. Co., 481 F.2d 1204, 1212 (8th Cir. 1973) (ruling that blanket refusals to answer all interrogatories, based on the Fifth Amendment privilege, are improper), *cert. denied*, 414 U.S. 1162 (1974).

The proper method of raising the privilege is for the deponent to appear at the deposition and be sworn under oath. Then the deponent should answer the questions he or she can and invoke the privilege only in response to specific questions and where it is legitimate to invoke that privilege. Securities and Exchange Comm'n v. Thomas, 116 F.R.D. 230, 234, n. 7 (D. Utah1987). This procedure then allows a court to review the record to decide whether the question posed indeed called for privileged information and if the privilege was properly asserted as to each specific question. SEC v. Thomas, 116 F.R.D. at 234 n.7. In other words, the claimant must be able to demonstrate how a responsive answer might have the tendency to incriminate him. "The court must determine whether the claimant is . . . confronted by substantial and 'real,' and not merely trifling or imaginary hazards of incrimination." Marchetti v. United States, 390 U.S. 39, 53, 88 S.Ct. 697, 705

7

(1968). The mere "say-so" of the claimant "does not of itself establish the hazard . . . ." Hoffman, 341 U.S. at 486.

In General Dynamics Corp., the circuit court affirmed the trial court's denial of defendants' motion for protective order to stay discovery until completion of all related criminal proceedings and request for an indefinite stay of trial. 481 F.2d at 1212. In reaching its decision, the Eight Circuit reasoned that had defendants asserted the privilege with respect to particular questions and requested that the answers be sealed, and/or that the responses be limited to used of counsel for purposes of the civil trial, the request might have been granted. Id. at 1213.

> Defendants' request for an indefinite postponement of the civil proceedings pending the final determination of their criminal convictions was unreasonable under the circumstances. Justice must be done in both criminal and civil litigations. The rights of a defendant in a criminal case must, of course be protected. But this does not mandate a complete disregard for the rights of civil litigants.

Id.

So, too here. The Court interprets Defendants' request to be in the nature of an indefinite postponement of the civil proceedings, with the Court finds unreasonable. *See* fn. 3 *supra*. Moreover, the request to delay the entirety of Mr. Larson's deposition falls within the category of an improper blanket refusal to answer all deposition questions or an inappropriate bar of the use of a particular mode of discovery.

The proper procedure is for Mr. Larson's deposition to be scheduled and noticed as soon as is convenient for all parties, Mr. Larson and the facility of his incarceration. It is improper for Mr. Larson to then move for a protective order, based on the privilege against self incrimination, as to the entire deposition. Instead, the deposition should proceed, and the questions asked. To the extent

8

that Mr. Larson may properly invoke a privilege against self incrimination, he should do so. However, to be legitimately invoked, he must demonstrate a "real and appreciable risk" of self incrimination as to each question he declines to answer on the basis of the privilege. Once the privilege has been raised, it is the movant's burden to file a Rule 26(c) motion for protective order. Rule 26(c) protection, under these circumstances, is confined to instances "where the witness has a reasonable cause to apprehend danger from a direct answer." Hoffman, 341 U.S. at 486. Stated differently, the privilege against self-incrimination protects information that will provide "a link in the chain of evidence needed to prosecute" criminal conduct. Malloy, 378 U.S. at 11.

The Court is aware of assertions by Mr. Larson and the government that virtually any and all questions that can be posed to Mr. Larson could or will tend to incriminate him. However, the Court cannot make this judgment call before the questions are asked and cannot engage in anticipating every question that could be asked of Mr. Larson.

The Court has also carefully reviewed the Supreme Court decision of Mitchell v. United States, 526 U.S. 314, 326 (1999), relied upon by Mr. Larson and Defendants for the proposition that a defendant may have a legitimate fear of adverse consequences when a sentence has yet to be imposed. Here, Defendants argue that because Mr. Larson's sentence is being appealed, then the sentence is not yet "fixed" or has yet to be imposed. Thus, any testimony he might give as to the underlying automobile accident or his employment history with the BIA could be injurious to his re-sentencing (if his appeal is granted).

The Court does not find that Mitchell controls the circumstances in this civil litigation. Mitchell did not involve any civil proceedings or the invocation of the privilege against self incrimination in related civil proceedings. Instead, in Mitchell, the question was whether a guilty plea

waived the privilege in the sentencing phase of the case. Mitchell had not yet been sentenced. The Supreme Court held that the guilty plea and/or statements made during the plea hearing did not waive a defendant's right to invoke the privilege against self incrimination during sentencing. This was true because where the sentence was not yet imposed, a defendant could legitimately fear adverse consequences from further testimony (in the criminal proceeding).

Here, Mr. Larson was already sentenced, even though he now has appealed that sentence. Even his appeal, however, seems limited in scope based on assertions of the parties. In other words, Mr. Larson challenges the upwards departure from the sentencing guidelines range and seeks to be re-sentenced at a lower guideline range. He does not assert actual innocence and does not challenge his conviction. Due to the limited nature of his appeal that does not seek to re-open or challenge the underlying guilty plea, the Court is reluctant to conclude that all of the questions that might be asked of Mr. Larson concerning the fatal automobile accident and/or his employment with BIA create a real potential for self incrimination. Indeed, if Mr. Larson believed that his appeal could result in a higher sentence, it seems unlikely that he would have brought the appeal in the first place.

Mr. Larson and the government also argue that answers about Larson's history of DWI could be taken into account in determining his sentence, should he be re-sentenced. However, the parties do not indicate whether this information was already taken into account or known at sentencing. Indeed, the Court notes that Mr. Larson's amended sentencing memorandum in No. CR 02-208 discusses his prior 9 arrests for drunk driving. [Doc. 29, No. CR 02-208.] Clearly this type of information already was known at the time of Mr. Larson's original sentencing, and thus, it is unlikely that the discussion of information already known to the government would demonstrate a "real and appreciable risk" of self incrimination.

10

In addition, Mr. Larson and the government contend that if Mr. Larson is required to answer Plaintiffs's questions about Larson's alleged falsification of BIA employment documents concerning his prior record of DWI, he could be subjected to an independent criminal prosecution. This seems to be a questionable basis for invoking the privilege in light of the signed plea agreement between Larson and the government, wherein the government agreed not to bring additional charges against Mr. Larson based on "the defendant's conduct now known to the U.S. Attorney's Office." [Doc. 20, No. CR 02-208.]

The Court recognizes that Mr. Larson may have a legitimate basis to object to some of the questions that are posed to him at a deposition in this civil proceeding. However, there must be a legitimate basis to invoke the privilege, or appropriate sanctions may be assessed.

## Conclusion

For all of the above-stated reasons, Plaintiffs' Rule 30(a)(2) Request for Leave to Depose Lloyd Larson [doc. no. 56] is granted. The deposition should be conducted in Mr. Larson's place of incarceration as soon as practicable, at a convenient time for the parties, the facility and Mr. Larson. Plaintiffs will be allowed a total of seven hours to take Mr. Larson's deposition and may videotape that deposition. Defendants also will be allowed a total of seven hours to take Mr. Larson's deposition. The two depositions should be scheduled back-to-back to minimize travel costs and disruption to the facility. Defendants' similar motion [doc. no. 55] is granted in part and denied in part with respect to Defendants' request to delay the deposition until the completion of the related criminal proceeding. Defendants' motion to strike [doc. no. 95] is denied as moot.

IT IS THEREFORE ORDERED that:

(1)   Plaintiffs' Rule 30(a)(2) Request for Leave to Depose Lloyd Larson, filed May 14, 2003 [Doc. No. 56] is GRANTED;

(2)   Defendants' Motion for Leave to Take Lloyd Larson's Deposition at the Federal Correctional Institution in Phoenix, Arizona, and (In the Event that the Related Criminal Proceedings Against Larson have not been Concluded by the Date on which Discovery is Scheduled to Close in this Case) for Further Leave Permitting Larson's Deposition to be Taken after the Close of Discovery, and Memorandum in Support Thereof, filed May 13, 2003 [Doc. No. 55] is GRANTED in part and DENIED in part; and

(3)   Defendants' Motion to Strike Plaintiff Pfeifer's Supplement to Plaintiffs' Joint Reply in Support of their Rule 30(a)(2) Request for Leave to Depose Lloyd Larson and Supporting Memorandum, filed June 19, 2003 [Doc. No. 95] is DENIED as moot.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge