## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JAMES J. "JIM" BELLER, as Personal
Representative of the estates of
LARRY BELLER and RITA BELLER, deceased,
and TERRY PFEIFER, as Personal Representative
of the estates of EDWARD RAMAEKERS and
ALICE RAMAEKERS, deceased,

                    Plaintiffs,

v.                                           No. CIV 02-1368 WPJ/LFG

The UNITED STATES OF AMERICA, and
AURENE M. MARTIN, Acting Assistant
Secretary of Indian Affairs,

                    Defendants.

## MEMORANDUM OPINION AND ORDER

### Introduction

THIS MATTER is before the Court on Defendants' Cross-Motion[1] for a Protective Order

as to Videotapes of Depositions, filed May 21, 2003.  [Doc. No. 60.]  Plaintiffs each filed separate

responses to the cross-motion, and the motion is fully briefed.  [Doc. Nos. 60, 63, 76, 82, 101.]  After

---

[1]Although it does not appear that Plaintiffs' filed a similarly identified cross motion for protective order, Plaintiffs did file a Motion Challenging the Designations of David Jones', Bobby Pablos's and Michele Justice's Depositions as Confidential [doc. no. 49], to which this cross-motion refers.  That earlier motion of Plaintiffs was fully briefed and resolved by the Court in an Order filed June 12, 2003.  [Doc. No. 86.]  In support of this cross motion, Defendants refer to sealed exhibits and pleadings filed as part of their response to Plaintiffs' related motion [doc. no. 49.]  In resolving the cross-motion, the Court notes that it has reviewed all of the pertinent pleadings and sealed exhibits, to which the parties refer.

careful consideration of the pleadings, related exhibits, and pertinent law, the Court denies Defendants' cross-motion for a protective order.  The Court's reasoning follows.

### Background

This litigation arises out of an automobile accident that occurred within the boundaries of the Laguna Indian Pueblo, on January 25, 2002 at about 1:53 p.m., in which Plaintiff Bellers and Ramaekers were killed after being struck head-on by a vehicle driven by Lloyd Larson.  Mr. Larson is not a party to this civil litigation.  At the time of the accident, Mr. Larson was driving a government-owned pick-up truck in the wrong direction on the Interstate in Cibola County, New Mexico.  He was an employee of the Bureau of Indian Affairs ("BIA"), and undisputably was driving while legally intoxicated at the time of the accident.

Plaintiffs, as personal representatives of the deceased, brought this action against the United States seeking damages under the Federal Tort Claims Act.  Plaintiffs allege that Mr. Larson was acting within the scope of his employment as a BIA employee, and therefore, that the United States is liable for Mr. Larson's conduct under a theory of *respondeat superior*.

The United States denies that it should be held liable and asserts that Larson was not acting within the scope of his employment at the time of the fatal collision, based on allegations that Mr. Larson never reported to work on the day of the accident and was instead engaged in a "personal frolic" when the collision occurred.

As a result of this fatal collision, criminal charges were brought against Mr. Larson.  He was indicted and pled guilty to four counts of second degree murder for the deaths of the two couples. United States v. Lloyd Larson, No. CR 02-208 (D.N.M.).  The New Mexico District Court sentenced Mr. Larson to a term of 240 months (20 years) for each of the four murders, the terms to run

concurrently.  Mr. Larson appealed his sentence, and that appeal is pending. United States v. Lloyd

Larson, No. 02-2240 (10th Cir.).

### Defendants' Cross Motion for Protective Order and Opposition

Because this case is brought under the Federal Tort Claims Act, it is a non-jury case and will

be tried before a federal judge.  Presently, discovery in this civil litigation is proceeding.  A number

of depositions have been noticed and/or taken.  Some or all depositions are being videotaped.  The

subject of this discovery dispute is Defendants' request that a protective order be entered under Rule

26(c) protecting any videotaped deposition from being used in any way other than for purposes of

this litigation.  More specifically, Defendants request that the videotaped depositions of David Jones,

Bobby Pablo and Michelle Justice,[2] "as well as any other deposition taken in this action," not be

disseminated to any third party.  [Doc. No. 60.]

In support of their motion, Defendants argue that use of the videotaped depositions for

reasons other than this litigation would violate the privacy interests of the deponents and non-parties

about whom they might testify.  They also assert that the improper use of videotapes of depositions

by unauthorized third parties, e.g., the media, could result in unfairly embarrassing and harassing non-

parties.  [Doc. No. 63, p. 4.]  Defendants explain that the nature of a videotaped deposition[3] creates

a greater potential for abuse because the format can be used in non-sequential film clips and sound

bytes that are "particularly devastating" to a deponent.  Defendants contend that "good cause" exists

---

[2]All three of the named deponents are former or current BIA employees.

[3]Although Defendants discuss the potential risks of videotaped depositions, they, along with Plaintiffs, seek to make videotapes of the depositions.

for the entry of the requested protective order due to the likelihood of abuse and embarrassment to non-party deponents.

The Court recognizes that the related criminal proceedings concerning Mr. Larson received significant media attention, due to the fatalities involved and nature of the accident.  In addition, this civil litigation has also received some press coverage.  For example, Defendants attached to their motion an article in the "American Indian Report" (July 2002) discussing both the criminal and civil proceedings.  [Doc. No. 60, Ex. A.]

Plaintiff Terry Pfeifer's opposition to the cross motion asserts that Defendants do not identify any privacy interest that outweighs the public interest in disclosure of the operations and activities of the government, particularly when the activities of government employees allegedly may include drinking on the job and/or use of government vehicles by BIA employees with a history of DWI's. Moreover, the "United States should not be able to conceal information concerning the activities and operations of the BIA by claiming a vague possibility that individuals will experience embarrassment." Plaintiff Pfeifer further argues that it is not his "intent to videotape these depositions so that the media may reduce the video to sound bytes, . . . [but that] the public has a right know about the policies and practices of its government that have put it in danger."  [Doc. No. 76, p. 2.]

Plaintiff Jim Beller makes a number of technical arguments with respect to Defendants' cross motion, none of which the Court finds compelling.  The Court declines to find the cross motion untimely, because under these circumstances it appears that the motion is timely since the Court has no information indicating that the videotapes have been released to or used by a third party.  The Court also declines to deny the motion based on Mr. Beller's arguments that the government lacks standing to bring the motion or that the cross motion is facially deficient.

**Analysis**

**A.      Good Faith Certification**

The Court notes initially that Rule 26(c) requires that the movant provides a certification that

he or she has "in good faith conferred or attempted to confer with other affected parties in an effort

to resolve the dispute without court action . . . ." before filing a formal request.  Fed.R.Civ.P. 26(c).

The Court does not consider Defendants' brief footnoted statement indicating Plaintiff Pfeifer's

opposition and Plaintiff Beller's non-response to reflect an adequate "good faith" attempt to resolve

this discovery dispute.  *See* <u>Kreishnakymar v. Dunkin Donuts</u>, 2000 WL 1838319 at *1 (S.D.N.Y.

Dec. 12, 2000) (discussing similar requirement in Rule 37(a) and defining "confer" to mean "to meet,

in person or by telephone, and make a genuine effort to resolve the dispute by determining . . . (a)

what the requesting party is actually seeking, . . . (c) what specific genuine issues, if any, cannot be

resolved without judicial intervention.  The exchange of letters between counsel stating positions 'for

the record' shall not be deemed compliance" with the rule's requirements).  The Court advises all

parties to confer in good faith before requesting court action.

**B.      Rule 26(c) Standard and Pertinent Case Law**

Rule 26(c) provides in pertinent part that:

> . . . for good cause shown, the court in which the action is pending
> . . . may make an order which justice requires to protect a party or
> person from annoyance, embarrassment, oppression, or undue burden
> or expense, including one or more of the following:
> . . .
> (6) that a deposition, after being sealed, be opened only by order of
> the court;

Fed.R.Civ.P. 26(c).  Rule 26(c)(6) appears to be the portion of the rule most pertinent to this dispute,

as subsection (6) has been interpreted to permit a court to order a deposition transcript sealed.

Stephen Backer-McKee, Federal Civil Rules Handbook 2003, Rule 26, p. 571.

The moving party carries the burden of showing "good cause" sufficient to grant entry of the

requested protective order under Rule 26(c).  *See* Hutchinson v. Pfeil, 201 F.3d 448 at *6 (Table,

Text in Westlaw), 1999 WL 1015557 (10th Cir. Nov. 9, 1999) (discussing burden in terms of a Rule

26(c)(7) request for protective order), *cert. denied*, 530 U.S. 1205 (2000).  "For good cause to exist,

the party seeking protection bears the burden of showing specific prejudice or harm will result if no

protective order is granted."  Phillips v. General Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir.

2002).  To find "good cause," the moving party must demonstrate with particularized facts the

potential harm.  Conclusory statements, or unsubstantiated, general examples are insufficient.  Felling

v. Knight, 2001 WL 1782360 at *2 (S.D. Ind. Dec. 21, 2001)[4] (*relying on* Charles Alan Wright,

Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure, § 2035, at 483-86 (2d ed.

1994)).  Instead, the movant must show that the disclosure will cause a clearly defined and serious

injury.  Patt v. Family Health Sys., Inc., 189 F.R.D. 518, 522 (E.D. Wis. 1999), *aff'd by* 280 F.3d

749 (7th Cir. 2002).

Once the burden of establishing good cause is met, the burden shifts to the party resisting the

movant to show why the court should allow dissemination of the material in dispute.  Culinary Foods,

Inc. v. Raychem Corp., 151 F.R.D. 297, 300-01 (N.D. Ill. 1993), *clarified on other grounds by* 153

F.R.D. 614 (N.D. Ill. 1993).   "If a court finds particularized harm will result from disclosure of

---

[4]This Court recognizes that unpublished opinions, and opinions from other district courts, are not binding
precedent.  However, because there appears to be little discussion by the Tenth Circuit of this exact discovery issue,
the Court finds these other published and unpublished opinions to be instructive.

information to the public, then it balances the public and private interests to decide whether a protective order is necessary." Phillips, 307 F.3d at 1210-11 (*citing* Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995)).

Many of the cases that analyze Rule 26(c) issues discuss the United States Supreme Court decision of Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199 (1984). Seattle Times did not address, to any significant degree, the showing required to demonstrate good cause. However, the Supreme Court did note that "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Id. at 36. *See also* Centurion Indus., Inc. v. Warren Steurer & Assoc., 665 F.2d 323, 326 (10th Cir. 1981) (trial court has discretion to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure, and/or what safeguards, if any, are appropriate in protecting the information).

There is much discussion and some dispute among the courts regarding whether depositions or certain pretrial discovery materials are presumptively public documents. Unfortunately, our own circuit has yet to answer this question. However, other circuits and other federal trial courts have considered this issue. The Seventh Circuit endorsed a presumption of public access to discovery materials, even while recognizing that pretrial discovery is usually conducted in private. Felling, 2001 WL 1782360 at *1-2 (*citing* Citizens Nat'l Bank v. Cincinnati Ins. Co., 178 F.3d 943, 945 (7th Cir. 1999)). The Seventh Circuit's reasoning was as follows:

> the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding. . . . That interest does not always trump the property and privacy interests of the litigants, but it can be overridden only if the latter interests predominate in the particular case, that is, only if there is good cause for sealing a part or the whole of the record in that case.

Citizens Nat'l Bank, 178 F.3d at 945.  *See also* Phillips, 307 F.3d at 1210 (the public generally can

gain access to litigation documents and information produced during discovery unless the party

opposing disclosure shows good cause to justify a protective order); San Jose Mercury News, Inc.

v. United States Dist. Ct., 187 F.3d 1096, 1103 (9th Cir. 1999) (well established that fruits of pretrial

discovery, in the absence of a Rule 26(c) order to the contrary, are presumptively public); Flaherty

v. Seroussi, 209 F.R.D. 295, 298, 300 (N.D.N.Y. 2001) (finding strong legitimate public interest on

the part of the citizenry to have unfettered access to court proceedings, particularly in cases that

involve elected officials and performance of government responsibilities); Hawley v. Hall, 131 F.R.D.

578, 581 (D. Nev. 1990) (presumption that discovery materials are open to public inspection).

In contrast, other courts have reasoned that documents that play no role in the performance

of Article III functions, like those materials passed between parties during discovery, lie beyond the

presumption's reach.  SEC v. TheStreet.Com, 273 F.3d 222, 232 (2d Cir. 2001).  In SEC, the Second

Circuit commented that deposition testimony does not directly affect an adjudication nor significantly

determine litigants' substantive rights.  Thus, such discovery is more akin to settlement discussions

and documents which do not carry a presumption of public access.  Id. at 233.  Moreover, pretrial

depositions are not public components of a civil trial and are generally not open to the public.  Seattle

Times, 467 U.S. 33 n. 19.[5]  Further, while the federal rules previously required parties to file

deposition transcripts with the court, that no longer is the case after the 2000 Amendments to Rule

---

[5]In Seattle Times, the Supreme Court concluded that the protective order was properly entered.  However, the facts of that case are distinguishable from those here.  For example, a protective order was entered on behalf of a private religious organization in Seattle Times, rather than a governmental agency, as would be the case here. The private entity in Seattle Times provided affidavit testimony showing that certain disclosures or information already had subjected their membership to defamatory letters and telephone calls, as well as threatened harm.  467 U.S. at 26-27.  Some of the disclosures at issue in Seattle Times pertained to the private organization's sources of financial support and membership, unlike this case where the disclosures relate to the operations and supervision of a governmental agency.

5(d). The present version of that rule now prohibits the filing of deposition transcripts, and thus, they are not "public records" in the sense that they might have been prior to the amendments.

###   C.   Lack of Good Cause Established

This Court does not determine whether deposition transcripts or videotaped depositions, in every case, should be considered presumptively open to public viewing. Instead, the Court concludes that a protective order should not issue in this case because good cause has not been demonstrated to warrant that measure.

Here, Defendants state that a protective order should be entered as to all portions of all videotaped depositions on the grounds that the deponents' privacy rights must be protected and to avoid unfair embarrassment and/or harassment to the deponent non-parties. Other than some sealed deposition excerpts, Defendants provide no additional, specific support for their position. The Court has carefully examined the sealed exhibits. [Sealed Doc. Nos. 62, 65.] In addition to those deposition excerpts, the Court reviewed sealed exhibit [doc. no. 107] that contains a summary of defendants' designations of deposition testimony they argue should be confidential under the terms of the March 18, 2003 Stipulated Protective Order [doc. no. 42.]

The Court agrees that public review of the deposition excerpts examined by the Court might very well subject the BIA and government, in particular, to embarrassment, if the testimony is found truthful. In addition, the deponents, along with the other BIA employees and supervisors to whom they refer, could be embarrassed by the testimony – particularly if established to be true. However, potential embarrassment and minimal invasions of privacy simply are inadequate, under the facts of this case, to support a finding of good cause sufficient to warrant a Rule 26(c) Order. Indeed, the Court finds that the potential embarrassment at stake is not outweighed by the public's interest in the

9

conduct of governmental officials and the operations of its governmental agencies, including these judicial proceedings.

A federal governmental agency's operations, management and supervision should not be concealed or sealed from the public's view, especially in relation to how employees may be authorized to drive government vehicles despite drinking problems and/or histories of DWI issues.  That said, this Court does not approve of a party's release of such information to a non-party with the intent to embarrass or harass those individuals.  Pretrial information should be used for purposes of the litigation at hand, and the Court reminds the parties of their obligation to litigate this matter in the courtroom rather than in the media.  The Court also advises the parties that they continue to be free to designate certain testimony as confidential in accordance with the parties' Stipulated Protective Order [doc. no. 42], provided that the information falls within the terms of that Order.

In reaching this decision, the Court notes that this is not a jury trial, where pretrial disclosure of evidence to the media (while certainly not condoned by the Court and inappropriate by trial counsel), could affect the selection of an unbiased jury.  In addition, a claim that public disclosure of information will be harmful to a party's (or non-party's) reputation or embarrassing does not establish good cause for a protective order.  Culinary Foods, 151 F.R.D. at 301 (*citing* Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986); Wauchop v. Domino's Pizza, Inc., 138 F.R.D. 539, 546 (N.D. Ind. 1991)).  "Because release of information not intended by the [deponent] to be for public consumption will almost always have some tendency to embarrass, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious."  Cipollone, 785 F.2d at 1121.  Here, the Court is unconvinced that Defendants have made a sufficient showing of potential "particularly serious embarrassment," but even if they

could, it appears that the potential serious embarrassment may lie with the governmental agency, rather than the individuals working for the agency.  In any event, the Court concludes that the public's interest in the operations of its governmental agencies overrides any concerns with an individual employee's embarrassment or privacy.

The Court finds the case of Flaherty v. Seroussi to be the most instructive on the issue at hand.  In Flaherty, the defendants moved for a protective order restricting the plaintiff's dissemination of a videotaped deposition of the mayor who was a named defendant.  209 F.R.D. 295.  Unlike this case, the plaintiff in Flaherty clearly avowed to publicize the deposition and to make the videotape freely available to the media.  Id. at 296.  Here, in contrast, Plaintiff Pfeifer noted that he did not intend to publicize the videotaped depositions to the media.

In Flaherty, the plaintiff opposed the motion for protective order on the ground that such protection would hamper the public access to materials bearing upon matters of significant public interest.  The federal district court denied the application for Rule 26(c) relief, after determining that good cause for the order had not been established.  The court reasoned that "the mere fact that some level of discomfort, or even embarrassment, may result from the dissemination of Mayor Seroussi's deposition testimony is not in and of itself sufficient to establish good cause to support the issuance of [a] protective order."  Id. at 299.  The court recognized a strong, legitimate public interest on the part of the citizenry to have unfettered access to court proceedings, particularly when they involve elected officials and the performance of their governmental responsibilities.  Id. at 300.

The Court agrees with the reasoning set out in Flaherty and finds that the facts, which involve the running of government and potential embarrassment to the deponents, support a similar conclusion here.  The Court also recognizes that some courts have held to the contrary, i.e., that

while the deposition transcript would not be sealed, the videotaped deposition would be sealed because "videotapes are subject to a higher degree of potential abuse than transcripts." <u>Felling</u>, 2001 WL 1782360 at *3. A number of courts similarly have sealed videotaped depositions, but particularly in high profile cases, i.e., involving allegations against the President of the United States. The Court does not find that any of those cases compel a different result under the circumstances of this case. Thus, the Court denies the application for a Rule 26(c) Protective Order.

IT IS THEREFORE ORDERED that Defendants' Cross-Motion for a Protective Order as to Videotapes of Depositions, filed May 21, 2003 [Doc. No. 60] is DENIED.

_Lorenzo F. Garcia_
_____
Lorenzo F. Garcia
Chief United States Magistrate Judge