IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES J. "JIM" BELLER, as Personal Representative of
LARRY BELLER and RITA BELLER, deceased,
and TERRY PFEIFER, as Personal Representative of
EDWARD RAMAEKERS and ALICE RAMAEKERS,
deceased,
        Plaintiffs,

  vs.                                    No. CIV 02-1368 WPJ/LFG

UNITED STATES OF AMERICA,

        Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF PFEIFER'S MOTION TO COMPEL SURVEY DATA,
SURVEYS AND COMMUNICATIONS ABOUT BIA DRIVING POLICY**

THIS MATTER is before the Court on Plaintiff Terry Pfeifer's Motion to Compel Survey Data, Surveys and Communication About BIA Driving Policy [Doc. 110]. Defendant United States filed a Response [Doc. 147]; Plaintiff filed a Reply [Doc. 174]; and Defendant filed a Surreply [Doc. 216], with the Court's permission over Plaintiffs' objection. No oral argument is necessary; the matter is now ready for ruling. For the reasons given below, Plaintiff's Motion to Compel is granted.

The facts giving rise to this lawsuit are set forth in numerous other opinions filed in this case and will be repeated here only briefly. On January 25, 2002, Defendant's employee Lloyd Larson ("Larson") was intoxicated and driving a government vehicle the wrong way on an interstate highway when he crashed head-on into another vehicle, killing all four occupants including Plaintiff's

decedents. Plaintiff Pfeifer and another personal representative bring suit against the Government under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, alleging that the Bureau of Indian Affairs (BIA), the governmental agency for which Larson worked, is responsible for the wrongful death of the four individuals killed in the crash, under theories of *respondeat superior*, negligent entrustment of an automobile, and negligent hiring, retention and supervision.

Plaintiffs complaint also contained a request for injunctive relief, to force the BIA to create and enforce a permanent policy which would prohibit employees with drinking problems or recent DWI convictions from using government vehicles, and to conduct background investigations into the driving records of all BIA Department of Roads employees and to periodically re-check those records. This claim is no longer part of the case. On August 24, 2003, U.S. District Judge William Johnson granted Defendant's Motion to Dismiss Plaintiffs' Claims for Injunctive Relief [Doc. 46], finding that the Court lacks jurisdiction to consider such an injunction.

In their complaint, Plaintiffs claim that Larson's superiors at the BIA were aware of Larson's long history of alcohol abuse, his numerous arrests and convictions for driving while intoxicated, and the fact that his license was at times suspended or revoked, but they nevertheless allowed him to drive and facilitated his use of a Government vehicle in the course of his employment. Plaintiffs also claim that many other BIA employees were likewise allowed, facilitated, and even required to drive as part of their jobs, even though the BIA knew that these employees had alcohol abuse problems, records of offenses related to DWI, and sometimes had suspended or revoked drivers' licenses.

Plaintiffs allege that, at all pertinent times, the BIA failed to maintain and enforce a policy prohibiting individuals with drinking problems or DWI convictions from driving government vehicles. They also assert that the BIA did not require its employees to reveal information about their driving

histories, including DWI or careless driving arrests or convictions, nor did the BIA routinely check the driving records of its employees before allowing them to drive government vehicles.  Plaintiffs further allege that, when a BIA employee was found to have a drinking problem or recent history of DWIs, the practice at the BIA Department of Roads was to ignore the information and continue to allow the employee to drive a government vehicle.  And Plaintiffs claim that, when Larson's driver's license was suspended due to a drunk driving conviction, BIA supervisors even assisted Larson in applying for a limited license so that he could continue to drive a government vehicle during the time his license was suspended.  Plaintiffs also allege that during certain periods, BIA supervisors allowed Larson to drive government vehicles in the course of his employment even though they knew or should have known that his driver's license was suspended or revoked.

In response to Plaintiff's discovery requests served in April 2003, including Request for Production No. 10 and Interrogatory No. 27, Defendant revealed that it has in its possession certain survey documents.  Plaintiffs characterize these documents as an analysis of BIA employees' investigative files and background information for the purpose of determining what impact a policy against drunk driving would have on the BIA.  [Doc. 112, at 2, and Ex. A thereto].  In addition, Defendant provided Plaintiffs with a privilege log, which lists a number of e-mail messages and memoranda which discuss a new BIA driving policy.  [Doc. 112, at 2, and Ex. B thereto].  Plaintiffs also state in their Motion to Compel that on June 20, 2003, Plaintiffs deposed BIA safety officer Alfred Abeita and questioned him about a proposed policy that would prevent people with DWI arrests in the last three years from driving government vehicles, and that defense counsel objected to questions regarding this proposed policy.

In response to Plaintiffs' discovery requests, the Government initially declined to produce the

3

survey documents or the data used in preparing them.  Plaintiff Pfeifer then filed this Motion to Compel, requesting that the Court order production of all the survey documents and underlying survey data, arguing that the data regarding background investigations, employees' driving histories, and analysis of the data are relevant to  the issues of whether the BIA allowed employees to drive despite its knowledge that those employees were a danger to other motorists, and relevant also to Plaintiffs' claim for injunctive relief (which claim had not yet been dismissed at the time the motion was filed).

In its initial Response to the Motion to Compel, the Government argued that the Motion to Compel is now moot, because all of the information sought in Plaintiff's motion has already been produced.  The Government stated it had withdrawn its previously invoked claims of "deliberative process" and attorney-client privilege with respect to documents reflecting intra-agency communications about development of a drivers' policy for the BIA.  In addition, the Government stated it had supplemented its response to Request for Production No. 10 by producing the documents identified in the privilege log, and had supplemented its response to Interrogatory 27 by producing survey spreadsheets.  [Doc. 147, at 2-9 and Exs. 1-2 thereto].

The documents identified in the privilege log consist of a draft policy and power point presentation, and email transmissions discussing and commenting on the draft policy.  [Ex. B to Doc. 112].  Plaintiff makes no argument in its Reply regarding this privilege log material, and the Court therefore determines that Plaintiff is satisfied with Defendant's production of this material.

However, Plaintiff continues to press its Motion to Compel with regard to the survey

4

spreadsheet material.[1] The survey spreadsheets consist of a listing, by region, of employees who have driving offenses on their records, including DWIs. The employees' job titles are given, but their names are blacked out of the copy presented to Plaintiff, as well as the copy filed with the Court under seal. The remainder of the spreadsheet information consists of details of each individual's arrests and convictions for offenses involving DWI, other moving violations, and alcohol or drug-related offenses.

In their Reply, Plaintiffs do not contest Defendant's assertion that it has produced everything Plaintiffs asked for, except in one respect: They argue that Defendants should be compelled to produce an unredacted version of the spreadsheet, revealing the names of the BIA employees who are the subjects of the spreadsheet report.[2] Plaintiffs argue that this information is relevant and will likely lead to the discovery of admissible evidence that the Government breached its duty to ensure that federal employees who are at risk of operating a Government vehicle while under the influence of alcohol would not be permitted to drive in the course of their Government employment. Plaintiffs seek the names of BIA employees, identified (by job title) on the spreadsheet as having a record of DWI offenses so they can conduct a follow-up investigation by questioning BIA employees and supervisors to determine whether the listed employees were ever disciplined or restricted in their use of Government vehicles.

---

[1]Defendants note that, although Plaintiffs make reference to the deposition testimony of Alfred Abeita in their memorandum in support of the Motion to Compel, they neither ask for any relief with regard to this testimony nor do they present argument anywhere in their briefing, detailing what they want the Court to do in connection with Mr. Abeita's deposition. The Court agrees and therefore makes no ruling on the relevance or discoverability of any further testimony from Mr. Abeita.

[2]Defendant states in its Surreply that the redacted version of the spreadsheets also eliminates the organizational codes identifying the BIA component agencies where the listed employees work.

Plaintiffs argue that the listed employees' privacy will be adequately protected by the confidentiality protections already in place in this case. *See*, Stipulated Protective Order [Doc. 42]. Indeed, Plaintiffs argue, the Government has gone further than the Stipulated Protective Order in this case allows, by redacting the names and organizational codes rather than simply producing the information and designating it as confidential.

The Court agrees. Defendant will be ordered to produce an unredacted copy of the spreadsheets, subject to the confidentiality provisions of the protective order already in force. The Court recognizes that this information is sensitive. Individuals appearing on the spreadsheet are listed therein because they have one or more DWI offenses on their driving record; in addition, some have reckless or careless driving convictions, other alcohol or drug offenses, and some have suspended driver's licenses and possibly outstanding warrants. However, in spite of the sensitive nature of this information, Plaintiffs are entitled to learn the names of these employees for the limited purpose of conducting further investigation to determine the extent of the BIA's knowledge of these offenses, and how the BIA reacted to such knowledge, including the steps taken, if any, to prevent these employees from driving in the course of their employment.

In its Surreply, the Government argues that the only possible relevance of this information is to Plaintiffs' claim for injunctive relief, and as that claim has been dismissed from the case, there is no longer any justification for disclosure of these names. The Government cites the case of Crawford v. Yellow Cab Co., 572 F. Supp. 1205 (N.D. Ill. 1983), a negligent entrustment case involving a taxicab accident, in which the District Court held that evidence of the driving records of the cab company's past and present employees was inadmissible under Fed. R. Evid. 404(b), which provides that evidence of other bad acts is generally not admissible to prove the character of the defendant in

6

order to show action in conformity therewith.

However, the Court at this point makes no determination as to the ultimate admissibility of this information at trial, but asks only whether the material appears "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); Centurion Industries, Inc. v. Warren Steurer & Assocs., 665 F.2d 323, 326 (10th Cir. 1981) ("relevancy is construed more broadly during discovery than at trial"). "Discoverability" and admissibility are separate questions. Plaintiff argues [*see,* Doc. 185, Plaintiff Pfeifer's Response in Opposition to Defendant's Motion for Leave to File Surreply] that the information is still relevant to the allegation in the Complaint that the BIA engaged in a widespread pattern and practice of facilitating and allowing numerous employees to drive Government vehicles, despite knowledge that those employees had alcohol abuse problems, had driving offense records including multiple DWIs, and/or had their driver's licenses suspended or revoked.

The Court finds that the information requested is relevant to the discovery of evidence on the question of the extent of notice to the BIA that its employees were a danger on the highways. If the agency was aware of a widespread problem and yet failed to devise and enforce a policy to cope with this problem, the evidence may well be admissible on Plaintiff's claims of negligence under the FTCA. The issue of admissibility will ultimately be determined by the trial judge. However, there is little question under Fed. R. Civ. P. 26 that this information is discoverable. If the evidence is admissible, Plaintiffs will still be charged with the burden of proving that any alleged failure to set and enforce policy is the proximate cause of the death of these individuals, but that is not the Court's concern at this stage of the litigation.

In addition, the information may be relevant to Plaintiffs' prayer for relief under the New

7

Mexico Wrongful Death Act, which requires the jury to award damages for any "mitigating or aggravating circumstances attending the wrongful act." N.M.S.A. (1978) § 41-2-3; N.M. UJI Civ. 13-1830 (2003); Folz v. State, 110 N.M. 457, 797 P.2d 246 (1990).[3]

If the BIA has been generally strict with its employees whose driving records are spotty, and Mr. Larson's case is an isolated incident which slipped by in its otherwise reasonable handling of such employees, this evidence would be relevant to mitigation. On the other hand, if the BIA consistently allowed, facilitated, or even required individuals with multiple DWI convictions to continue driving even after their licenses were revoked, this may well be relevant and admissible on a claim for aggravation. In any case, the information is relevant for purposes of discovery as it likely to lead to discovery of admissible evidence, and Plaintiffs should be allowed to pursue their investigation into the BIA's handling of what may have been a pervasive agency problem. Fed. R. Civ. P. 26.

The Court finds that the information redacted from the spreadsheets submitted by the Government in connection with its Third Supplement to its responses to Plaintiffs' discovery requests, including the names and organizational codes of BIA employees listed in the spreadsheets, is relevant and discoverable. Plaintiffs are entitled to this information and may use it in further investigation, so long as it remains confidential under the terms of the protective order in this case.

---

[3]New Mexico's wrongful death statute authorizes the fact finder to consider aggravating or mitigating circumstances. N.M. UJI Civ. 13-1830. However, awarding supplementary damages to the plaintiffs due to the presence of aggravating circumstances may equate to an award of exemplary damages intended to punish defendant for malicious, willful, reckless or wanton conduct. No punitive damage award may be assessed against the United States under the FTCA. 28 U.S.C. § 2674; Miller v. United States, 901 F.2d 894, 896 (10th Cir. 1990). An exemplary award would not punish the United States but rather would punish taxpaying citizens. The relationship and interplay between New Mexico's wrongful death statute, which allows consideration of the mitigating or aggravating circumstances attending the wrongful act, see, N.M. UJI 13-1830, and the prohibition of punitive damages against the government, is unclear. Folz v. State, supra. This issue is presently before the Court [Doc. 205, Defendant's Motion to Strike Plaintiffs' Demand for Multiplication of Damages Based on the "Aggravating Circumstances Attending the Wrongful Death"].

## **Order**

IT IS THEREFORE ORDERED that Plaintiff Terry Pfeifer's Motion to Compel Survey Data, Surveys and Communication About BIA Driving Policy [Doc. 110] is granted, and Defendant is ordered to produce an unredacted copy of the spreadsheets disclosed to Plaintiff in its Third Supplement to Defendant United States of America's Answers and Responses to Plaintiffs' First Interrogatories and Requests for Production, marked as "Beller-USA 07/25/03, 5283-5285," and "Beller-USA 07/25/03, 5286-5291," and filed herein as attachments to Sealed Doc. 175;

IT IS FURTHER ORDERED that the information so disclosed is designated as confidential under the terms of the Stipulated Protective Order [Doc. 42] in this case.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge