IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES J. "JIM" BELLER, as
Personal Representative of LARRY BELLER
and RITA BELLER, deceased, and TERRY
PFEIFER, as Personal Representative of
EDWARD RAMAEKERS and ALICE
RAMAEKERS, deceased,

       Plaintiffs,

v.                                                                                                     Civil No. 02-1368 WPJ/LFJ (ACE)

UNITED STATES OF AMERICA, and
the BUREAU OF INDIAN AFFAIRS,

       Defendants.

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S DEMAND FOR MULTIPLICATION OF DAMAGES

THIS MATTER comes before the Court upon Defendants' Motion to Strike Plaintiffs' Demand for Multiplication of Damages Based on the Aggravating Circumstances Attending the Wrongful Death, filed September 25, 2003 **(Doc. 205)**. Having considered the parties' briefs and the applicable law, I find that Defendants' motion is well-taken and shall be granted.

### BACKGROUND

This is a claim for wrongful deaths brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA"), arising from a fatal collision between a car in which Plaintiffs' decedents were traveling and a government pickup truck driven by Lloyd Larson ("Larson"), an employee of the Bureau of Indian Affairs ("BIA"). Larson was found to be intoxicated when he drove the BIA pickup truck in the wrong direction on Interstate 40. Plaintiffs seek damages for lost earnings, lost future earning capacity, lost value of life, lost household services, other forms of economic benefits and interests, funeral expenses, pain and suffering and estate taxes. They also

seek damages based on aggravating circumstances attending the wrongful deaths of the Bellers and Raemakers, based on the conduct of the United States through the BIA and its agents. See Second Amended Complaint (Doc. 30).

Plaintiffs have made a demand for a multiplication of damages assessed against the United States based on the New Mexico's Wrongful Death Act, which allows a consideration of "aggravating circumstances attending the wrongful act, neglect or default." NMSA 1978, § 41-2-3. Plaintiffs contend that the conduct of the BIA and its agents warrants the multiplication of any damages awarded to them in this action under the wrongful death statute. Their intention is apply a multiplication factor of at least five to the various damages subtotals.[1] Defendants contend that such a multiplication of damages constitutes an award of "punitive damages" against the United States, which is statutorily prohibited under the Federal Tort Claims Act, 28 U.S.C. § 2674.[2] Accordingly, Defendants seek to strike any increase in damages claimed by Plaintiffs based on aggravating factors relating to the deaths of the Bellers and the Raemakers.

---

[1] The request for the Beller's total damages is $72,636,005.00, and range from $24,000,000.00 to $35,000,000.00 for the Raemakers. Ex. 1.

[2] 28 U.S.C. §2674 states: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages. If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof."

## DISCUSSION

The FTCA provides a limited waiver of the United States' sovereign immunity for torts committed by government employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant" under applicable law. 28 U.S.C. §1346(b). However, the Government's liability is subject to the limitation that it is not liable for punitive damages. Hatahley, 351 U.S. at 182; 28 U.S.C. § 2674. The parties do not dispute that punitive damages are not available against the Government. The issue here is whether damages recovered for aggravating circumstances under the New Mexico wrongful death statute are essentially punitive in nature and thus not recoverable under the FTCA. The resolution to this issue lies in how punitive damages are defined.

The extent of the United States' liability under the FTCA is generally determined by reference to state law. Molzof v. U.S., 502 U.S. 301 (1992); Hatahley v. United States, 351 U.S. 173, 182 (1951) (generally, damages are determined by the law of state where the tortious act is committed); 28 U.S.C. § 1346(b). However, the meaning of the term "punitive damages" as used in § 2674, a federal statute, is by definition a federal question. Molzof, 502 U.S. at 305. In Molzof, the Supreme Court resorted to traditional tort principles in describing "punitive damages":

> "Punitive damages" is a legal term of art that has a widely accepted common-law meaning; "[p]unitive damages have long been a part of traditional state tort law." Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 255, 104 S.Ct. 615, 625, 78 L.Ed.2d 443 (1984). Although the precise nature and use of punitive damages may have evolved over time, and the size and frequency of such awards may have increased, this Court's decisions make clear that the concept of "punitive damages" has a long pedigree in the law. . . . Legal dictionaries in existence when the FTCA was drafted and enacted indicate that "punitive damages" were commonly understood to be damages awarded to punish defendants for torts committed with fraud, actual malice, violence, or oppression. . . On more than one occasion, this Court has confirmed that general understanding. "By definition, punitive damages are based upon the degree of the defendant's culpability." Massachusetts Bonding & Ins. Co. v. United States, 352 U.S. 128, 133, 77 S.Ct. 186, 189, 1 L.Ed.2d 189 (1956) [other citations omitted]. **The common-law definition of "punitive damages" focuses on the nature of the defendant's conduct. As a general rule, the common law**

3

**recognizes that damages intended to compensate the plaintiff are different in kind from "punitive damages."**

Molzof, 502 U.S. at 306 (emphasis added). Molzof also recognized that some damages exist in a "gray" zone which are awarded "for some reason above and beyond ordinary notions of compensation," but which are not by definition "punitive damages" barred under the FTCA. 502 U.S. at 308.[3] In Molzof, these "gray" zone damages were an award of damages for future medical expenses or loss of enjoyment of life. The district court rejected the award on the basis that they would have a punitive effect on the Government because the veteran-plaintiff was entitled to free medical care. The Supreme Court reversed, disagreeing that those damages were punitive damages either under the common law or the FTCA because recoverability of those damages was not based on any proof that the defendant "engaged in intentional or egregious misconduct and their purpose is not to punish." Molzof, 502 U.S. at 312. In other words, damages which are not strictly limited to actual damages may be awarded under the FTCA, including those amounts which lie in a "gray" zone outside of "ordinary notions of compensation," provided they are not damages awarded based on the culpability of a defendant's conduct.

In this case, the conduct upon which Plaintiffs seek to recover falls into the latter category, which is purely punitive in nature. Plaintiffs describe the "aggravating circumstances" with regard to the Bellers as: (1) the BIA's outrageous conduct of ignoring Larson's clear drunk driving problem; (2) the BIA's actual knowledge of other employees drinking and driving and its pattern of acquiescence thereto, and; (3) the BIA's affirmative conduct of assisting Larson to have his

---

[3] The Supreme Court in Molzof eschewed the Government's narrow construction of "punitive damages" to mean any damages other than those awarded for a plaintiff's actual loss, or damages which are punitive "in effect." 502 U.S. at 306. As the Court's holding indicates, the nature and basis of the award, and not its intended -- or unintended -- effect, is what must be considered.

4

driver's license reinstated, fully aware of Larson's drinking and driving history, which allowed Larson to drive drunk and kill the Bellers and the Ramaekers. Ex. 2. The "aggravating circumstances" listed for the Raemakers include: (1) the BIA knew or should have known of severe alcohol problems and previous arrests & convictions; (2) Larson's nine previous DWI arrests and five previous DWI convictions; (3) the agency's record over the past 15 years of exposing the public to the potential and actual danger of Government vehicles driven by an intoxicated Government employee; and (4) BIA's failure to have a policy prohibiting those with alcohol problems from driving Government vehicles.

    The above circumstances allude to more than simple negligence. Defendants accurately describe them as "extreme." Mem. Brf. at 8. Defendants also cite cases similar to the present case, involving injuries resulting from accidents where the driver was intoxicated. In those cases, New Mexico courts concluded that punitive damages were appropriate against both the driver and/or the driver's employer. Thus, the type of conduct upon which Plaintiffs base their multiplication of damages, and which they gratuitously label as "aggravating circumstances," are essentially what New Mexico courts have considered to warrant punitive damages. Plaintiffs rely on <u>Folz et al v. State of New Mexico, et al</u>., 110 N.M. 457 (1990), which addressed the New Mexico wrongful death statute in a claim brought under the New Mexico Tort Claims Act. Upon close inspection, however, <u>Folz</u>, turns out not to afford Plaintiffs with the legal support they need. <u>Folz</u> is not dispositive because it was determined under state law. Regardless of the label Plaintiffs wish to use in describing the basis for a multiplication of damages ("compensatory" damages or damages for "aggravating circumstances"), the relevant analysis must still refer to the traditional common law principles discussed in <u>Molzof</u>, keeping in mind that the FTCA does not permit an award of punitive damages against the Government. See <u>Missouri Pac. R. Co. v. Ault</u>, 256 U.S. 554, 558

5

(1921) ("Whatever name be applied, the element of punishment clearly predominates and Congress has not given its consent that suits of this character be brought against the United States"); Jackson v. U.S., 577 F.Supp. 1377 (E.D.Mo.), affirmed, 750 F.2d 55 (1983) (damages allowed by Missouri state law for aggravating circumstances were not recoverable as damages against the United States under § 1346(b) of FTCA because such damages were considered punitive in nature) (citing In re Air Crash Disaster Near Chicago, Ill., 644 F.2d 594, 606 (7th Cir. 1981)).

Moreover, the rationale in Folz does not conflict with the bar against an award of punitive damages against the Government under the FTCA. The issue in Folz was whether giving a jury instruction on "mitigating or aggravating circumstances" was error, given that no damages could be awarded against the state for acts that were willful, wanton, malicious, reckless, grossly negligent, fraudulent or in bad faith. UJI Civ. 13-1827. The New Mexico Supreme Court concluded that, given that the jury had been cautioned by the judge, and no instruction had been given on punitive damages, it was unlikely that the jury was confused. The Court stated:

> Our statute plainly distinguishes between compensatory and exemplary damages but does not restrict the required consideration of mitigating or aggravating circumstances to the latter. . . Under our fault system, **there is a policy of deterrence associated with responsibility for compensatory damages. This fact is at the heart of fault versus no-fault policy considerations. It is a question separate from that of punitive damages.**

and

> By virtue of the statute's failure to restrict the required consideration of mitigating or aggravating circumstances to exemplary damages, and by virtue of the purpose and meaning of the statute as construed in our previous cases and uniform jury instructions, we conclude that consideration by the jury of mitigating and aggravating circumstances in setting compensatory damages comports with [the wrongful death statute].

Folz, 110 N.M. at 467 (emphasis added). At the same time, however, the Court made clear that the degree of the defendant state's culpability or the nature of its conduct was not a factor be considered in assessing "compensatory" damages under the wrongful death

6

statute:

> What is more important here, however, is that the instructions in this case did not fail to provide adequate guidance to the jury on the task that lay before it. The prohibition in Section 41-4-19(B) barring award of exemplary damages against the state was made quite clear. In reviewing claimed error in jury instructions, appellate courts should consider the instructions as a whole. Instructions will be held adequate if they fairly represent the law applicable to the issue in question. [Citation omitted]. As discussed above, the wrongful death instruction given in this case was an adequate statement of the law. **We note that no punitive damage instruction was submitted to the jury as to any defendant, and, moreover, that the trial court orally advised the jury on two occasions that it was not to award punitive damages against the state.** In a wrongful death action in which the state is a defendant and punitive damages are sought against another party, it may prove helpful for the court specifically to instruct the jury that, as to the state, no damages may be awarded under UJI Civ. 13-1827 to punish for acts that were willful, wanton, malicious, reckless, grossly negligent, fraudulent, or in bad faith. Here, however, we believe it unlikely that, having been cautioned by the judge and having before it no instruction on punitive damages, the jury was confused by the "mitigating and aggravating circumstances" language as applied to the Department, and we conclude there was no error.

*Fol*z, 110 N.M. at 467-68 (emphasis added). The above language cannot be read to support Plaintiffs' proposition, i.e., that a multiplication of damages compensatory damages under the "aggravating circumstances" provision of the wrongful death statute may be awarded based upon the egregiousness of Defendants' conduct, or upon its culpability.[4]

Plaintiffs are correct that New Mexico law permits an award based on "aggravating circumstances" in a wrongful death case. They are also correct that, based on Folz, damages for aggravating circumstances may be considered as a type of compensatory damages, even where they are not strictly compensatory, but are awarded for deterrence purposes. However, even under Folz, regardless of what label one uses, damages awarded for "aggravating circumstances" may not be awarded if their basis is the degree of a defendant's culpability. I find Plaintiffs seek a multiplication of damages under the "aggravating circumstances" provision in the wrongful death

---

[4] In Folz, as well as the line of cases preceding Folz, "mitigating or aggravating circumstances attending the wrongful act, neglect, or default" appears to refer to the decedent's experience of conscious pain and suffering or the incurring of medical expenses before dying.

7

statute for conduct which is clearly punitive in nature, because it is based on the alleged egregiousness of Defendants' actions.[5]  Accordingly, Plaintiffs' demand for a multiplication of damages shall be stricken.

**THEREFORE,**

    **IT IS ORDERED** that Defendants' Motion to Strike Plaintiffs' Demand for Multiplication of Damages Based on the Aggravating Circumstances Attending the Wrongful Death **(Doc. 205)** is hereby GRANTED in that Plaintiffs' demand for a multiplication of damages based on the aggravating circumstances attending the wrongful deaths of Plaintiffs' decedents shall be STRICKEN.

                                                     _____
                                                     UNITED STATES DISTRICT JUDGE

---

[5]  Plaintiff Pfeifer recently submitted a Motion for Leave to File Notice of Additional Authority pertinent to these issues (Doc. 355), offering Bowen v. U.S., 1999 WL 1074080 (D.Oreg. 1999). Bowen involved an Oregon trespass statute which provided for treble damages if the trespass was willful, and double damages if the trespass was "casual or involuntary." The court rejected the Government's argument that the double damages award was punitive because the double damages that were available under the Oregon statute did not "require a showing of intentional or egregious behavior before obtaining double damages." Thus, such an award could not be construed as punitive damages "in any traditional meaning of the term." The Bowen case actually underscores Defendants' view in the present motion, as well as my the findings herein, since the basis for Plaintiffs' request for multiplication of damages *is* based on a level of conduct which comports with the standard New Mexico courts use to award punitive damages.

8