IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES J. "JIM" BELLER, as Personal
Representative of the Estates of
LARRY BELLER and RITA BELLER,
deceased, and TERRY PFEIFER,
as Personal Representative of the
Estates of EDWARD RAMAEKERS
and ALICE RAMAEKERS, deceased,

      Plaintiffs,

v.                                                                                    Civil No. 02-1368 WJ/LFG

THE UNITED STATES OF AMERICA,

      Defendant.

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT I

THIS MATTER comes before the Court pursuant to Defendant's Motion for Partial Summary Judgment Dismissing Plaintiffs' *Respondeat Superior* Claim (Count I) [Docket No. 218]. Having reviewed the submissions of the parties and the applicable law, I find the motion is not well taken and will be denied.

**BACKGROUND**

Larry Beller, Rita Beller, Edward Ramaekers and Alice Ramaekers were killed on Friday January 25, 2002. The car in which they were traveling was struck head-on by a pickup truck being driven the wrong way in the eastbound lanes of Interstate 40 in New Mexico. The truck was owned by the United States and was being driven by Lloyd Larson. Mr. Larson was an employee of the United States Department of Interior (DOI), Bureau of Indian Affairs (BIA),

Eastern Navajo Agency, Branch of Roads (ENA-BOR). At the time of the collision, Mr. Larson was extremely inebriated.

Mr. Larson was authorized to use the government vehicle to commute on the first day of the work week from his permanent duty station in Crownpoint, New Mexico, to his project job site west of Albuquerque and south of Interstate 40. He was authorized to use the vehicle to commute between the project work site and his temporary lodging in Albuquerque during the week. He was authorized to use the vehicle between the project job site or his temporary lodging to restaurants, drug stores, barber shops, places of worship, cleaning establishments, and similar places necessary for his sustenance, comfort or health. He was authorized to use the vehicle as otherwise authorized by his agency. Finally, he was authorized to use the vehicle to return to his permanent duty station in Crownpoint, New Mexico on the afternoon of the last day of the work week. Mr. Larson's travel time was included in his salary.

As of the time of the collision at approximately 1:53 p.m. on Friday January 25, 2002, Mr. Larson had not shown up at the project job site. As it was a Friday, Larson had been staying in Albuquerque during the week at a hotel. While it is undisputed that Larson called the project work site that morning at approximately 6:55 a.m., parties dispute the substance of that call. Defendant contends that Larson called in sick to the site and said that he would not be coming to work that day. Plaintiffs urge that Larson called to report he would be late to work.

While in Albuquerque, Larson was staying at a Super 8 hotel on the west side of the city. Larson checked out of his hotel at approximately 6:55 a.m. on January 25, 2002. The parties dispute what Mr. Larson did from the time he checked out of his hotel until 11:24 a.m. that morning. It is undisputed that, at 11:24 a.m., Mr. Larson withdrew $40.00 from an ATM

machine on East Lomas Blvd. in Albuquerque. At 11:55 a.m., Mr. Larson purchased a 12-pack of Bud Lite beer at the Smith's Supermarket at 111 Coors Road S.E. in Albuquerque. In the early afternoon, Mr. Larson went to the Dairy Queen in the Laguna Travel Center located west of Albuquerque at exit 140 on Interstate 40 where he purchased a "to go" meal then drove away. Employees at the Dairy Queen observed that Larson smelled of alcohol and appeared to be intoxicated while in the Dairy Queen.

At approximately 1:45 p.m. on January 25, 2002, Mr. Larson drove his government owned vehicle to the Cañoncito Grocery Store which is located further west of the Laguna Travel Center off of exit 131 of Interstate 40. Persons at the store observed that Larson appeared to be intoxicated. Shortly before 1:53 p.m., Larson drove the government owned truck onto the east bound lanes of Interstate 40 and began traveling west in the wrong direction. At approximately 1:53 p.m., in the vicinity of mile marker 128, Larson collided head on with the vehicle in which Larry Beller, Rita Beller, Edward Ramaekers and Alice Ramaekers were traveling.

While it is undisputed that Larson called the project work site on the morning of January 25, 2002 to either report that he would be late or that he would be out sick for the day, Larson apparently failed to call in to his immediate supervisor as required by the ENA-BOR leave policy. On some date after the collision and after learning of the collision, Larson's immediate supervisor Bobby Pablo placed Larson on AWOL status for January 25, 2002 and Larson was not paid his salary for that date. The stated reason for placing Larson on AWOL status was his alleged failure to notify his immediate supervisor of his use of sick leave.

Defendant filed the instant motion pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 56 with regard to Count I on the grounds that Larson was acting outside the scope of his employment at the time of the collision on January 25, 2002.

**LEGAL STANDARD**

A party may go beyond the allegations contained in the complaint and challenge the facts upon which jurisdiction depends. Sizova v. National Institute of Standards & Technology, 282 F.3d 1320, 1324-25 (10th Cir. 2002); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). A Rule 12(b) motion to dismiss can challenge the substance of the complaint's jurisdictional allegation in spite of its formal sufficiency by relying on affidavits or any other evidence properly before the court. Sizova, 282 F.3d at 1324-25; New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495 (10th Cir. 1995). A court has wide discretion to allow affidavits or other documents to resolve disputed jurisdictional facts under Rule 12(b). In such instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a Rule 56 motion. Sizova, 282 F.3d 1324-25; Holt, 46 F.3d at 1003. However, if resolution of the jurisdictional question is intertwined with the merits of a case, a court must convert a motion to dismiss for lack of subject matter jurisdiction into a motion to dismiss for failure to state claim or motion for summary judgment. Sizova, 282 F.3d at 1324-25; Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippett v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997) Holt, 46 F.3d at 1003. A jurisdictional question is intertwined with the merits of a case if subject matter jurisdiction is dependent on the same statute that provides the substantive claim in the case. Sizova, 282 F.3d at 1324-25; Holt, 46 F.3d at 1003. In this case, both the subject matter jurisdiction of this Court and Plaintiffs' substantive claims depend on the provisions

4

of the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b).  Resolution of the jurisdictional issue will require the Court to look beyond the allegations in the pleadings.  Thus, Defendant's Motion will be converted to and analyzed as a motion for summary judgment pursuant to Fed. R. Civ. P. 56.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Worrell v. Henry, 219 F.3d 1197, 1204 (10th Cir. 2000).  In ruling on a motion for summary judgment, a court does not weigh the evidence, but determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  Jeffries v. State of Kansas, 147 F.3d 1220, 1228 (10th Cir. 1998).  In making this determination, a court must construe all the facts in the record and reasonable inferences that can be drawn from those facts in a light most favorable to the nonmoving party.  Worrell, 219 F.3d at 1204; Jeffries, 147 F.3d at 1228.

**DISCUSSION**

"[T]he party invoking federal jurisdiction bears the burden of establishing its existence." McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182, 189 (1936); see also Miller v. United States, 710 F.2d 656, 662 (10th Cir. 1983).  It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983) (citation omitted); see also FDIC v. Meyer, 510 U.S. 471, 475 (1994); United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941).  When the United States waives its immunity from suit, a

court should neither narrow the waiver nor extend it beyond that which Congress intended. Smith v. United States, 507 U.S. 197, 203 (1993).

In 1946, Congress passed the FTCA which waived the sovereign immunity of the United States for certain torts committed by federal employees. Meyer, 510 U.S. at 475 (1994). Among the tort claims for which sovereign immunity has been waived are those that are:

> "[1]against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death, [4] caused by the negligent or wrongful act or omission of any employee of the Government, [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

Id. at 477 (quoting 28 U.S.C. § 1346(b)).

In order to establish subject matter jurisdiction, a claimant must prove each of the above six elements set out in the FTCA, Meyer, 510 U.S. at 477, including that the employee in question was acting within the scope of his office or employment. Under the FTCA, whether an employee of the United States was acting within the scope of his office or employment is determined by the doctrine of *respondeat superior* as applied in the state where the act or omission occurred. Williams v. United States, 350 U.S. 857 (1955); Henderson v. United States, 429 F.2d 588, 590 (10th Cir. 1970). Under New Mexico law, an employee's act is in the scope of his employment if:

1. It was something fairly and naturally incidental to the employer's business assigned to the employee; and
2. It was done while the employee was engaged in the employer's business with the view of furthering the employer's interest and did not arise entirely from some external, independent and personal motive on the part of the employee.

New Mexico Uniform Jury Instruction (Civil) 13-407, NMRA.

Whether an act is committed in the scope of employment is an issue of fact which must be resolved in each case in light of the particular facts. McCauley v. Ray, 453 P.2d 192 (N.M. 1968); Nabors v. Harwood Homes, Inc., 423 P.2d 602, 603 (N.M. 1967); Medina v. Fuller, 971 P.2d 851, 856 (N.M. App. 1998). A court may not grant summary judgment on the issue whether an employee was acting within the scope of employment unless from the facts presented, only one reasonable conclusion can be drawn. Medina, 971 P.2d at 856.

Defendant argues that Larson had deviated from his employer's business at the time of the collision, that he was engaged in conduct that arose entirely from an external, independent and personal motive, that he had abandoned his employment based on the major deviation, both in duration and nature, from the course of his employment. While Defendant's argument is not without merit, this Court cannot say, as a matter of law, that no reasonable fact finder could conclude from the facts and circumstances of this case that Larson was acting within the scope of his employment. At the time of the collision, Larson was traveling a route on Interstate 40, albeit in the wrong lanes, that would routinely be used to travel from Albuquerque to the project work site or to the permanent duty station in Crownpoint. Larson was traveling this route on a day and at a time that he would reasonably have been traveling in order to return to his permanent duty station. Additionally, there are facts from which a fact finder could infer that employees were authorized to use government vehicles to run personal errands during work hours and even arrive late to work due to personal errands or use of sick leave for a partial day. Thus, a reasonable fact finder could conclude that Larson was traveling this route at a time that he would reasonably be traveling from Albuquerque to his project work site.

Defendant contends that the evidence shows Larson was not acting in the scope of his employment between 6:55 a.m. and 11:55 a.m. on January 25, 2002, and that an employee who departs from the scope of his employment cannot reenter it, however much he may desire to, until he is within the flexible limits of his employment.  See Barela v. DeBaca, 359 P.2d 138, 140 (N.M. 1961).  Viewing the evidence in a light most favorable to Plaintiffs, this Court cannot say that, as a matter of law, Larson had not reentered the scope of his employment at the time of the collision.

Based on the foregoing, Defendant is not entitled to summary judgment on the grounds that this Court lacks subject matter jurisdiction over Plaintiffs' claim in Count I.  There are issues of fact with regard to whether Larson was acting within the scope of his employment at the time of the collision on January 25, 2002.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendant's Motion for Partial Summary Judgment Dismissing Plaintiffs' *Respondeat Superior* Claim (Count I) [Docket No. 218] is hereby DENIED.

_____
UNITED STATES DISTRICT JUDGE